## CONSOLIDATED UNDERWRITERS v. KELLY et al. (No. 961–5090.)

Commission of Appeals of Texas, Section B. March 27, 1929.

C. A. Lord, of Beaumont, for plaintiff in error.

David E. O'Fiel and Albert Reagan, both of Beaumont, and D. C. Bennett, of Orange, for defendants in error.

SPEER, J. Louisa Kelly seeks to recover compensation under our Workmen's Compensation Law as the surviving wife of Joe Kelly, the employee, who died from an injury received in the course of his employment. The whole case turns upon the question of whether or not Louisa was the surviving wife of the deceased. Her claim was based upon an alleged common-law marriage to Joe Kelly, and the validity of the claim depends upon the effect of the existence of a prior marriage of Louisa as an impediment to the consummation of the asserted common-law marriage between her and Joe. The trial court instructed a verdict setting aside the award of the Industrial Accident Board and denying the plaintiff's petition for compensation, on the theory that the undisputed evidence showed that she was not the wife of Joe Kelly at the time of his death. The Court of Civil Appeals first reversed and rendered the judgment in favor of the common-law wife, but afterward on rehearing remanded the cause to the trial court with instructions. 300 S. W. 981.

The Court of Civil Appeals found as follows: "In 1920, Joe Kelly had some trouble with appellant's sister, while he was living at Amelia, La. Thereupon he deserted appellant and left Louisiana, and appellant did not hear from him until 1925. At the time Joe Kelly deserted appellant, they were not husband and wife, and as neither of them had previously married, they were single persons in the eyes of the law. A few months after Joe Kelly deserted appellant, she heard that he was dead, and in March, 1920, contracted a ceremonial marriage with one George Brown, under authority of a marriage license duly issued and duly executed, thereby becoming his lawful wife. Recognizing the validity of this marriage, she lived with George Brown at her home in Amelia, La., until 1925, when, learning that Joe Kelly was living in Beaumont, Tex., she deserted her husband and joined Joe Kelly at Beaumont in October, 1925, and lived with him continuously from that date as his wife until his death on the 19th of January, 1926. They resumed their relations with the intention of living together as husband and wife until their death. Joe Kelly introduced her to his Beaumont friends as his wife, and she acknowledged him openly as her husband. They lived and cohabited as husband and wife, and received their friends in their home as such, and their friends recognized them as husband and wife. The relations between Joe and appellant were such that, except for the fact that Louisa had a living husband, the law would have declared their status to be that of a common-law marriage. There is no evidence against that conclusion. But for the fact that George Brown, Louisa's husband, was living when she rejoined Joe Kelly in Beaumont, the conditions under which they resumed their relations would have made them husband and wife. George Brown died about Thanksgiving, 1925; but neither appellant nor Joe Kelly knew of that fact, and appellant had no knowledge of it until after Joe's death. The death of George Brown made no change in their relations. They made no new contract in relation thereto, but from October, 1925, when they reunited their lives in the city of Beaumont, Tex., there was no change in their relations until Joe's death in January, 1926."

These findings are amply supported by the evidence and are in keeping with the implied findings of the trial court, and are therefore binding upon us. The Court of Civil Appeals held that these facts as matter of law constituted Louisa the wife of Joe on January

19, 1926, the day he received the fatal injury, saying: "Because of the sanctity of the marriage relation, a sound public policy impels the law to infer consent 'to have been given at the first moment when the parties were able to enter into the contract.' * * * As they desired marriage, and intended their relations to be that of husband and wife, this continuing intent must be recognized during all the time they cohabited as such, and therefore the agreement upon which they renewed their relations made them husband and wife from the moment the bar to their lawful marriage was removed."

We approve the conclusion of the Court of Civil Appeals that Joe and Louisa were husband and wife at the date of the former's death. We do not approve the statement that "a sound public policy impels the law to infer consent" under the circumstances found, but we do agree that the facts as found authorized an inference of fact as to matrimonial intent at a time when no legal impediment existed. It is undoubtedly true that the agreement for marriage, whatever be the evidences of an attempt to execute it, so long as the legal impediment existed, was of no effect. The consummation of the marriage, however, cannot be denied for the want of agreement, but must be denied because of the legal impediment which prevented its consummation. The same matrimonial agreement, however, made at a time when no legal impediment existed to have this dissolving effect, would, upon every consideration, be lawful. It frequently happens, especially in common-law marriages, that the marriage which, of course, includes the agreement to marry, is proved by circumstances, technically known as cohabitation. Proof that a couple lived together under the same name, introducing each other as husband and wife, respectively, recognizing their children, and the many other respects tending to show their marital status, is sufficient to prove a marriage. It is not necessary in addition to offer evidence of the statutory celebration, or of the actual agreement of the parties to be husband and wife. These essential facts are embraced in the marriage which is thus proved by circumstances. So here the facts showing that, after Brown's death, the parties continued their relations deporting themselves as husband and wife and considering themselves such, are sufficient to prove as a matter of fact that they intended their relations to be marital, and since there then existed no legal impediment, their agreement and relations were valid and lawful. Their continued living together as husband and wife after the removal of the impediment bespeaks a continued intention and agreement, day by day, to be husband and wife, and this being true, the Court of Civil Appeals was right in reversing the judgment of the trial court.

The same uncontradicted facts, perhaps, would have required that court to render judgment for defendants in error. But defendant in error makes no complaint of the judgment in that respect, and we do not decide it.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.